# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF FLORIDA

In re:  Queen E. Miller,                                Case No.: 08-40298
             Debtor                                Chapter 7

Theresa M. Bender, Trustee                              Adversary: 08-04009
For the Estate of Queen Elizabeth Miller
    Plaintiff

vs.

Edny Saint Felix,
    Defendant
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    The Plaintiff, Theresa M. Bender, Trustee For the Estate of Queen Elizabeth Miller,

Plaintiff, requests that this Honorable Court enter Summary Judgment in her favor pursuant to

FRBP 7056(a) and Rule 56 F.R.Civ.P. and in support thereof says:

1.) Pursuant to Loc.R. 56.1the Plaintiff submits the following as disputed issues of material

    fact:

      a.  The representations of the Defendant at the time of the transaction as to whether

          he was simply making payments on the mortgage or whether he would be paying

          the mortgage in full.

          i.  Prior to the subject transaction the Defendant advertised that he bought

             houses as evidenced by the Defendant's deposition statement on May 22,

             2009 page 86:1. (Exhibit A)

ii. According to the deposition of Edny Saint Felix, May 22, 2009 page 43:15 "I made it clear that I was not going to assume the mortgage, that I was just taking over the payment...until we sell the property" (Exhibit B)

iii. According to the Plaintiff's Response to Defendant's First Interrogatories, number 6: "Mr. Saint Felix said he was going to buy the house and pay off the mortgage." (Exhibit C)

iv. According to the Plaintiff's Response to Defendant's First Interrogatories, number 10: "Mr. Saint Felix never changed the mortgage to his name or paid it off, like he said it would". (Exhibit D).

v. The document attached as Exhibit C to the Plaintiff's complaint is entitled a "Warranty Deed" and purports to transfer the subject real property from the Debtor to the Defendant as trustee for the Miller 1032 Calloway Trust.

vi. The Defendant knowingly and deliberately structured the transaction as trust creation as evidenced by the Defendant's deposition statement on May 22, 2009 page 39:20. (Exhibit E)

vii. When asked during deposition how much the Debtor sold the house for the Defendant stated: "She sold the house for what she owed plus $1,000.00" as evidenced by the Defendant's deposition statement on May 22, 2009 page 42:24. (Exhibit F)

viii. The amount that the Debtor owes on the house remains unpaid and the mortgage remains in place as evidenced by the Defendant's deposition statement on May 22, 2009 page 53:8. (Exhibit G)

      ix. The Defendant deliberately utilized a trust transaction to conceal the
property transfer of the property from the mortgage company as evidenced
by the Defendant's deposition statement on May 22, 2009 page 127:19.
(Exhibit H)

2.) The central issue of material fact involved in this case is whether or not the Defendant
deceived the Plaintiff as part of a scheme to deprive the Debtor and her creditors of the
equity in the real property. The Plaintiff alleges that the Defendant offered to buy the
debtor's house, promised that he would pay off the home, and that he drafted documents
which he told the debtor would accomplish the transaction. Instead, the Defendant is
alleged to have knowingly drafted documents which created a trust which he purports
transferred all value and right of possession for the real property to him, but left the
Debtor with liability for the mortgage. During deposition the Defendant stated that he
created the trust in order to avoid the due on sale clause contained in the mortgage. The
Defendant further admitted that the debtor did not request that he create a land trust or
agree to provide financing for his purchase of the home. The Defendant further stated at
deposition that he advertised that he bought houses. The Warranty Deed drafted by the
Defendant does not state the names of any trust beneficiary.

3.) "Summary judgment is appropriate if the pleadings, depositions, and affidavits show that
there is no genuine issue of material fact, and that the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S.
317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). An issue of fact is "material" if it is a
legal element of the claim under applicable substantive law which might affect the
outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 91

L. Ed. 2d 202 (1986); <u>Allen v. Tyson Foods</u>, 121 F.3d 642, 646 (11th Cir. 1997). An

issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact

to find for the non-moving party. <u>Allen</u>, 121 F.3d at 646. On a motion for summary

judgment, the Court must view all the evidence and all factual inferences drawn

therefrom in the light most favorable to the non-moving party, and determine whether

that evidence could reasonably sustain a jury verdict. <u>Celotex</u>, 477 U.S. at 322-23; Allen,

121 F.3d at 646." <u>Lebel v. Rampage Sport Fishing Yachts</u>, 2007 U.S. Dist. LEXIS 43134,

3-4 (S.D. Fla. June 14, 2007). In the present case, the Defendant has not shown through

the pleadings, affidavits, or depositions that there is an absence of material fact. Indeed,

the Defendant has failed to cite directly to any pleading, affidavit, or deposition in

support of his motion for summary judgment. The Defendant's Motion for Summary

Judgment must be denied based upon the failure of the Defendant to present anything

more than dispute of the Plaintiff's claims and the existence of disputed material fact with

regards to the Defendant's claimed basis for Summary Judgment in his favor.

4.) The Plaintiff has stated claims for: An action to recover real property; revocation of

warranty deed; unfair and deceptive trade practices; and avoidance of transfer. These

claims all seek to recover real property which the Debtor thought was sold and the

mortgage satisfied; but instead the real property was placed into a trust with the

Defendant named as trustee and the beneficiaries unnamed, and the Debtor was left with

mortgage liability.

5.) The Defendant has failed to prove by fact or legal argument that the Plaintiff is not

entitled to recover the real property or to revoke the warranty deed. The Bankruptcy

Court for the Middle District of Florida considered a case where a debtor placed property

into a revocable trust which contained a spendthrift clause. In deciding that the trust property was not shielded from the debtor's creditors the Court wrote: "Public policy prevents Debtor from placing his property in a revocable trust for his own benefit, thereby shielding the property from the claims of his creditors. The Trust is void as to Debtor's existing and future creditors, and such creditors can reach his interest under the trust." In re Cattafi, 237 B.R. 853, 856 (Bankr. M.D. Fla. 1999). This reasoning was followed by the Southern District Court when it wrote:

> The Bankruptcy Court correctly surmised that the Trust language would permit the Mauritian trustee to amend the trust at his or her discretion to deem Lawrence to be a beneficiary once again, and that Lawrence retained the power as settlor to change the trustee. n13 Id. The Bankruptcy Court went on to cite and discuss In re Portnoy, 201 B.R. 685 (Bankr. S.D.N.Y. 1996), In re Brooks, 217 B.R. 98 (Bankr. D.Conn. 1998), and In re Cameron, 223 B.R. 20 (Bankr. S.D. Fla. 1998) in support of its finding. In re Lawrence, 227 B.R. at 917-18. The Court specifically restated the holding in In re Brooks for the proposition "that certain assets placed in an offshore trust [are] nevertheless assets of the bankruptcy estate and subject to the Court's jurisdiction," and for the idea that the court should "refuse[]" to allow the laws of the foreign jurisdiction to control because these laws [are] repugnant to . . . public policy." Id. at 917 n. 17. This analysis, and the decisions cited by the Bankruptcy Court, support the finding that the Trust is governed by Florida and federal bankruptcy law. Florida and federal bankruptcy law both prohibit individuals from setting up self-settled spendthrift type trusts and maintaining the benefits of and ability to significantly control same, while keeping the assets away from creditors. See In re Cattafi, 237 B.R. 853, 856 (M.D. Fla. 1999) ("The general rule is that when one has an interest in property which he may alien or assign, that interest, whether legal or equitable, is liable for the payment of his debts.") (citing Croom v. Ocala Plumbing & Electric Co., 62 Fla. 460,

465, 57 So. 243, 244 (1911)).” Lawrence v. Chapter 7 Trustee (In re Lawrence), 251 B.R. 630, 642 (S.D. Fla. 2000).

6.) The Defendant has also failed to establish that there is no factual or legal argument regarding the Plaintiff's claim for Unfair and Deceptive Trade Practices. In this action the Defendant is accused of deceiving the Debtor as to the nature of the transaction, of failing to satisfy the mortgage on the property while leaving the Debtor liable, and of constructing a transaction which transferred all benefit of the property to himself as trustee. The Defendant is currently accepting rent for the property and is holding himself out as the owner and landlord of the property. That the Defendant has made the mortgage payments since the date of the transaction is immaterial because the Debtor remains liable for the mortgage and the Plaintiff has taken no steps to assume liability for the mortgage or satisfy the lien. In fact, the entire structure of trust transaction was designed to deceive the Debtor's mortgage creditor and avoid the due on sale clause contained in the mortgage.

7.) Had the subject transaction occurred after October 1, 2008 the Defendant would have committed a per se violation of the Florida Unfair and Deceptive Trade Practices Act. On October 1, 2008 section 501.1377 Florida statutes became effective and governs the type of transaction designed by the Defendant. The statute contains language regarding the intent and purpose of the statute and states: “

(1) LEGISLATIVE FINDINGS AND INTENT. --The Legislature finds that homeowners who are in default on their mortgages, in foreclosure, or at risk of losing their homes due to nonpayment of taxes may be vulnerable to fraud, deception, and unfair dealings with foreclosure-rescue consultants or equity purchasers. The intent of this

section is to provide a homeowner with information necessary to make an informed decision regarding the sale or transfer of his or her home to an equity purchaser. It is the further intent of this section to require that foreclosure-related rescue services agreements be expressed in writing in order to safeguard homeowners against deceit and financial hardship; to ensure, foster, and encourage fair dealing in the sale and purchase of homes in foreclosure or default; to prohibit representations that tend to mislead; to prohibit or restrict unfair contract terms; to provide a cooling-off period for homeowners who enter into contracts for services related to saving their homes from foreclosure or preserving their rights to possession of their homes; to afford homeowners a reasonable and meaningful opportunity to rescind sales to equity purchasers; and to preserve and protect home equity for the homeowners of this state." Fla. Stat. § 501.1377(1)

8.) The unfair and deceptiveness of the subject transaction can be found within the provisions contained within Fla. Stat. § 501.1377, even if the statute was enacted after the subject transaction. The Defendant is an "equity purchaser" as defined by Fla. Stat. § 501.1377(2)(a). Pursuant to Fla. Stat. § 501.1377(2)(c) "Foreclosure related rescue services" are defined as "any good or service related to, or promising assistance in connection with: 1. Stopping, avoiding, or delaying foreclosure proceedings concerning residential real property.." The statute further provides: "In any foreclosure-rescue transaction, before or at the time of conveyance, the equity purchaser must fully assume or discharge any lien in foreclosure as well as any prior liens that will not be extinguished by the foreclosure." Fla. Stat. § 501.1377(5)(d). Lastly, and importantly for the purposes of the subject transaction the statute provides: "A person who violates any provision of this section commits an unfair and deceptive trade practice as defined in part II of this

chapter. Violators are subject to the penalties and remedies provided in part II of this
chapter, including a monetary penalty not to exceed $ 15,000 per violation." Fla. Stat. §
501.1377(7).

9.) The Defendant has failed to show that its statements and structuring of the transaction
were not deceptive. The Florida Unfair and Deceptive Trade Practices Act is intended to
be construed consistently with the decisions of the Federal Trade Commission. "It is the
intent of the Legislature that, in construing subsection (1), due consideration and great
weight shall be given to the interpretations of the Federal Trade Commission and the
federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s.
45(a)(1) as of July 1, 2006." Fla. Stat. § 501.204(2) and "2) All substantive rules
promulgated under this part must not be inconsistent with the rules, regulations, and
decisions of the Federal Trade Commission and the federal courts in interpreting the
provisions of s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1)." Fla.
Stat. § 501.205(2). The Defendant's representations that the Debtor was selling her home
to him, rather than granting him rights as a trustee while leaving her liable for the
mortgage liability are material representations regarding the transaction. "The FTC's
definition of materiality, however, embraces any claim that is "likely to mislead a
reasonable consumer." There is no requirement of actual deceit. If a claim is material
because it is likely to deceive, it is not rendered otherwise simply because it is
unsuccessfully advertised." <u>Novartis Corp. v. FTC</u>, 223 F.3d 783, 787 (D.C. Cir. 2000).
When considering a Florida Unfair and Deceptive Trade Practices Claim this Court
should apply the FTC as stated in the statute: a "violation of this part" is defined as

"(b) The standards of unfairness and deception set forth and interpreted by the Federal

Trade Commission or the federal courts." Fla. Stat. § 501.203(3)(b).

10.) The Defendant has failed to demonstrate absence of disputed fact that his representations

that he was buying the Debtor's property and paying off the mortgage where unfair and

deceptive when in reality he was drafting documents which would create a trust in which

he was named as trustee and that he would not be relieving the Debtor of her mortgage

liability which remains in place nearly 3 years after the transaction, cannot be found by a

trier of fact to in violation of Fla. Stat § 501.204.

Respectfully submitted this ²²ⁿᵈday of June 2009

/S/David H. Abrams
David H. Abrams, Esq.
Attorney for the Debtor/Plaintiff
Fla. Bar No.: 0692484
2236 Capital Circle N.E., Suite 106
Tallahassee, Florida 32308
(850) 224-7653 Telephone
(850) 222-0206 Facsimile
Info@TallahasseeConsumerLawyer.com

### Certificate of Service

I hereby certify that a true and correct copy of the foregoing, accompanied by the attached amended complaint, was provided by electronic and/or regular U.S. mail to: Allen P. Turnage, Esquire, Attorney for Defendant, P.O. Box 15219, Tallahassee, FL 32317 and Theresa M. Bender, Chapter 7 Trustee, this June 22, 2009.

/S/David H. Abrams
David H. Abrams, Esq.
Attorney for the Debtor/Plaintiff

# EXHIBIT A

86

1      Q      How did you happen to buy a house out in

2  Quincy, Florida?

3      A      They contacted me from a sign that I had that

4  said that we buy houses.

5      Q      So you were advertising that you buy houses?

6      A      Yes, I was advertising.

7      Q      What did your sign say?

8      A      That we buy houses.

9      Q      You buy houses?

10     A      Yes.

11     Q      Did you advertise it in the newspaper or you

12  just put up the sign?

13     A      I used to have ads in the paper.

14     Q      Okay.  In the Tallahassee Democrat?

15     A      I think it only ran maybe one time in the

16  Democrat, but I did it several months or several weeks

17  on Big Bend and so forth, as well as networking with

18  other people, letting them know I was in the business.

19     Q      How many signs did you put up?

20     A      Not too many.  Probably about -- anywhere from

21  ten to 20.

22     Q      Ten to 20?

23     A      Yes.

24     Q      Over how wide an area were you advertising?

25     A      Mostly the south, like south of Tallahassee

# EXHIBIT B

43

1   $1,000.

2        Q    All right.  Is that recorded on there?

3        A    No, not recorded here.

4        Q    Is there any document here that says you're

5   going to assume the liability of the mortgage?

6        A    No, I never told her I was going to assume the

7   liability of the mortgage.  I just told her I was going

8   to make -- there is a difference between assuming the

9   mortgage and taking the property subject to.  We took

10  the property subject to.

11       Q    And where did you learn this?

12       A    I learned this at the seminar.

13       Q    So you have a very sophisticated understanding

14  of what you were doing with these documents?

15       A    Yeah.  And I specifically told her that I -- I

16  made it clear that I was not going to assume the

17  mortgage, that I was just taking over her payments, just

18  making the monthly payments on it until we sell the

19  property.

20       Q    But she has no mechanism to enforce that

21  against you, does she?

22       A    Other than my trust, yes.

23       Q    Okay.  And is there anything in here that

24  precludes her from removing you as the trustee?

25       A    On this document, no.  But she's --

180089b2-e893-4c1a-9909-9d1337d3c23a

# EXHIBIT C